# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| INGRAM BARGE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:15-cv-0507 |
| | ) | Judge Aleta A. Trauger |
| AMERICAS STYRENICS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Pending before the court is a Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, to Transfer Venue, filed by the defendant Americas Styrenics, LLC, ("AmSty") (Docket No. 8), to which the plaintiff Ingram Barge Company ("Ingram") has filed a Response in opposition (Docket No. 16), and AmSty has filed a Reply (Docket No. 20). For the reasons discussed herein, AmSty's motion will be denied.

## BACKGROUND[1]

Ingram is a Tennessee corporation with its principal place of business in Nashville, Tennessee. Ingram provides barge transport services.

AmSty is a Delaware limited liability company with its principal place of business in The Woodlands, Texas. AmSty has facilities in Connecticut, Ohio, Illinois, Louisiana, California, and Cartagena, Colombia. AmSty does not have any facilities or offices in Tennessee, nor does AmSty employ any individuals, produce any products, or advertise (or have a registered agent) in Tennessee. AmSty's products include Styrene monomer and polystyrene resin.

---

[1] This section contains only those facts that are relevant to the jurisdictional inquiry, all of which are undisputed.

1

Ingram provided barge transportation services to AmSty pursuant to a contract that was in effect from January 2012 to January 2015.[2] None of the loading or unloading of AmSty's products under this contract took place in Tennessee, though it appears from the record that administrative tasks related to the transportation services were handled from Ingram's Nashville offices.

On September 12, 2014, AmSty issued a request for proposal ("RFP") to Ingram and several other transportation companies to bid on new barge transportation business for AmSty, in particular transporting AmSty products by barge from AmSty's facility in St. James, Louisiana to its facility in Joliet, Illinois. On October 3, 2014, Ingram timely submitted a responsive proposal to AmSty that included pricing information. Over the next few months, Ingram and AmSty communicated regarding the terms of this proposal and, in response, Ingram amended the terms at least twice. During this time, AmSty representatives travelled to Tennessee on more than one occasion to meet and attend social outings with Ingram representatives.[3]

AmSty asserts that it issued its RFP to "all barge carriers that, to AmSty's knowledge, transport products from St. James, Louisiana to Joliet, Illinois and are considered reliable and quality carriers in the industry." (Docket No. 9 at p. 3.) AmSty further asserts that its decision to send its RFP to Ingram was not in any way related to Ingram's location in Tennessee, nor did AmSty benefit from Ingram's location in Tennessee in engaging Ingram for transport services.

---

[2] This contract – the formation and terms of which are undisputed – is not the subject of the instant action.

[3] There are disputes of fact as to whether these meetings and social outings were connected to Ingram's proposal and the alleged contract negotiation and formation. The court finds that resolution of this factual dispute is not material to the finding of jurisdiction, which would be unaltered, even if the court were to assume, as AmSty alleges, that these meetings were unrelated to the alleged contract at issue.

On December 15, 2014, AmSty informed Ingram, verbally and in writing, that it was awarding Ingram a portion of AmSty's barge transportation business to begin in January of 2015 and expire in January of 2018.

From January to April of 2015, Ingram transported by barge AmSty's products from St. James, Louisiana to Joliet, Illinois.[4] No loading or unloading of product occurred in Tennessee. AmSty paid Ingram for these transport services by bank transfer.

In February of 2015, AmSty notified Ingram, verbally and in writing, that it had made a calculation error when considering proposals and awarding future transport work to Ingram; AmSty represented that engaging Ingram to perform transport services at the rates indicated in Ingram's final proposal would disadvantage AmSty by approximately $1.5 million per year. AmSty suggested that it was open to considering alternative pricing options from Ingram in order to continue the business relationship but that it would not continue to engage Ingram for additional services at the proposal rate.

Ingram immediately responded by asserting that Ingram and AmSty had a valid and enforceable contract based on Ingram's proposal, AmSty's acceptance, and the beginning of performance (referring to the transport services Ingram had provided AmSty beginning in January of 2015). Nevertheless, Ingram agreed to negotiate pricing options in an effort to reach a resolution. AmSty denied that there was an enforceable contract but engaged in some negotiations with Ingram.

---

[4] The parties dispute whether these services were performed pursuant to the contract alleged in this action, or simply on a per-voyage basis. It is not necessary for the court to resolve this dispute in determining whether jurisdiction is proper. Also, it is undisputed that, in the course of transport, the products travelled through Tennessee waterways. The court does not, however, rely on this fact in its jurisdictional analysis.

On April 21, 2015, AmSty terminated its business relationship with Ingram and ceased to have any products transported by Ingram after that time.

On May 1, 2015, Ingram filed this action for breach of contract, alleging that a contract had been formed based on Ingram's proposal (and that Ingram had consequently forgone other business opportunities) and seeking specific performance or damages for lost profits. (Docket No. 1.)

On May 28, 2015, AmSty filed the pending Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, to Transfer Venue under 28 U.S.C. § 1404 (Docket No. 8), along with an Affidavit of Randall F. Pogue (Docket No. 8, Ex. 1), and a Memorandum in Support (Docket No. 9). On June 11, 2015, Ingram filed a Response in opposition (Docket No. 16), along with an Affidavit of Daniel T. Martin (Docket No. 17). On June 23, 2015, with leave of court, AmSty filed a Reply. (Docket No. 20.)

## **ANALYSIS**

It is undisputed that there are no grounds for general personal jurisdiction over AmSty in Tennessee. The sole jurisdictional question before the court is whether Tennessee may assert specific personal jurisdiction over AmSty in this contract dispute. In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must demonstrate by affidavit sufficient evidence to support a *prima facie* case for jurisdiction; the court has the discretion to decide the motion on the affidavits alone or, where there are factual disputes material to the inquiry, to hold an evidentiary hearing. *See Theunissen v. Matthews*, 935 F.2d 1454, 1458-59 (6th Cir. 1991). Because there are no disputed facts that are material to the jurisdictional analysis, nor have the parties requested discovery, or an evidentiary hearing, the court will determine the question of specific personal jurisdiction on the affidavits alone.

The court will then address AmSty's alternative argument that, if jurisdiction is established, the court should transfer venue to either the Southern District of Texas, where AmSty has its principal place of business, or the Eastern District of Louisiana, where the loading of AmSty's cargo was performed by Ingram.

## I. Specific Personal Jurisdiction

As the parties agree, Tennessee's long-arm statute allows the court to assert jurisdiction so long as doing so is within constitutional limits. *See Bridgeport Music, Inc. v. Still N The Water Publishing*, 327 F. 3d 472 (6th Cir. 2003). In interpreting the constitutionality of jurisdiction, the Sixth Circuit requires each of the following three factors to be present for jurisdiction to be present:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

S. *Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968); *see also SFS Check, LLC v. First Bank of Del.*, 774 F.3d 351 (6th Cir. 2014).

### A. Purposeful Availment

The fact that a defendant entered into a contract with a resident of a forum state is not alone sufficient to establish purposeful availment. *CompuServve*, *Inc. v. Patterson*, 89 F.3d 1257, 1265 (6th Cir. 1996) ("[M]erely entering into a contract with [a resident of the forum state] would not, without more, establish . . . minimum contacts."); *see also Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000) (citing *Nationwide Mutual Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 795 (6th Cir. 1993) and *Burger King v. Rudzewicz*, 471 U.S. 462, 479 (1985)).

5

As the Supreme Court has held, however, "with respect to interstate contractual obligations . . . parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. 476 (internal citations omitted). And, as the Sixth Circuit has noted, "'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' must be considered to determine whether 'the defendant purposefully established minimum contacts with the forum.'" *Calphalon*, 228 F.3d at 722 (quoting *Burger King*, 471 U.S. at 479).

As is made clear in the cases cited by the parties, these two factors – 1) that the defendant reached out to the resident of the forum state (and not the other way around);[5] and 2) that the defendant's contact with the forum state was continuous and ongoing – have, when present, consistently led to a finding of purposeful availment by a defendant who contracted with a resident of the forum state and, when absent, expressly led to the opposite result.[6] *Compare*

---

[5] The *Mohasco* opinion notes that jurisdiction over a defendant is not *precluded* where the *plaintiff* first reaches out to the *defendant* – as occurred in that case – so long as the defendant ultimately chooses to engage in an ongoing relationship and, essentially, reaches back to engage the plaintiff. 401 F.2d at 382. This point, however, does not undercut the significance of the defendant's initiating contact with the forum state in establishing jurisdiction.

[6] While the establishment of an enforceable contract remains contested in this action, it is undisputed that the basis of the claim is the contract negotiation engaged in by the parties in anticipation of a second future long-term contractual relationship. It is further undisputed that, at a minimum, Ingram provided AmSty with at least some transport services between January and April of 2015, which – if not performed under a long-term contract as alleged by Ingram – at least constituted several short-term contract transactions. Moreover, the parties have a history of doing business pursuant to a long-term contract. For these reasons, without determining the merits of the underlying contract dispute, the court will analyze this case as one between two parties who contracted with one another. Indeed, both parties cite primarily to cases considering the assertion of jurisdiction over defendants who contracted with plaintiffs.

*Calphalon*, 228 F.3d at 722-23 (finding no purposeful availment where the defendant was engaged by the plaintiff resident of the forum state to perform sales representation services outside of the forum state); *Kerry Steel, Inc v. Paragon Indus., Inc*, 106 F.3d 147, 152-52 (6th Cir. 1997) (finding no purposeful availment where the contact between defendant and forum state was an isolated sales transaction, and "there was no 'reaching out'" by defendant to the forum state plaintiff but, rather, an unsolicited sales call by the plaintiff to the defendant); *Nationwide Mut. Ins. Co v. Tryg Intern. Ins. Co., Ltd.*, 91 F.3d 790, 795-96 (6th Cir. 1996) (finding no purposeful availment over an insured party in the resident state of the insurer, where the insured party did not solicit the insurer, and the coverage was part of an insurance pool); *LAK, Inc. v. Deer Creek Enters.*, 885 F. 2d 1293 (6th Cir. 1989) (finding no purposeful availment arising from a single real estate transaction, involving a parcel outside of the forum state, in which the plaintiff contacted the defendant through an unsolicited inquiry); *Smirch v. Allied Shipyard, Inc.*, 164 F. Supp. 2d 903, 908 (5th Cir. 2001) (finding no minimum contacts, in this maritime case, where the defendant was contacted by the plaintiff resident of forum state to perform repair services on the plaintiff's behalf with respect to an isolated transaction),[7] *with*

---

[7] AmSty suggests that a great deal of significance should be attributed to the fact that, in *Calphalon* and *Kerry*, the substantial performance of the contract took place outside of the forum state, and the subject matter of the contracts was not related to the forum state – facts that are analogous to the instant action. However, when viewed in context alongside other cases where jurisdiction was found to arise from a contract between a defendant and a resident of the forum state, these factors appear not to be outcome determinative. *See Burger King,* 471 U.S. 462 (finding jurisdiction, despite the fact that the primary subject matter of the contract was the defendant's operation of a franchise outside of the forum state, and plaintiff's supervisory and support services were also provided primarily out of state). In addition, in *Calphalon*, the ongoing service performance under the contract was carried out by the defendant, who was not a resident of the forum state, so there were clearer grounds to find that the performance took place outside of the forum. 228 F.3d at 722-23. In the instant case, to the contrary, the performance of the contract was done by Ingram, a Tennessee resident. So, while the loading and unloading of

*Burger King*, 471 U.S. 462 (finding purposeful availment where the defendant intentionally entered into a long-term interdependent franchising relationship with the plaintiff forum state resident); *Tharo Sys., Inc. v. Cab Produkttechnik GMBY & Co., KG*, 196 F. App'x 366, 371 (6th Cir. 2006) (finding purposeful availment and expressly differentiating this case from *Calphalon* because, here, the defendant German corporation "'reached out' to [the forum state] and created a continuing contractual obligation there" in working to establish a joint venture); *Cole v. Mileti*, 133 F.3d 433 (6th Cir. 1998) (finding purposeful availment where the defendant reached out to create an ongoing contractual relationship with the forum resident, despite contract clause indicating that another state's law should apply to contract disputes between the parties); *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1170 (6th Cir. 1988) (finding purposeful availment where defendant "originated and maintained the required contacts" with the forum state).

AmSty is correct that its dealings with Ingram – even if they created an enforceable contract – do not, without more, show that AmSty purposefully availed itself of the laws of Tennessee for the purposes of establishing jurisdiction. AmSty, however, both proactively reached out to Ingram in its RFP and engaged in ongoing contact with Ingram to negotiate contract terms. AmSty further engaged Ingram to provide transport services over the course of three months in early 2015, services which were coordinated through Ingram's Tennessee offices. While this remains a matter of dispute, these services may have constituted partial performance under the three-year contract that is the subject of this litigation. And, even if performed on a per-voyage basis, these services alone evidence the ongoing business relationship

---

cargo may have taken place elsewhere, it would be unfair to characterize the performance – which necessarily involved administrative oversight carried out by Ingram employees based in the Nashville office – as having taken place entirely outside of Tennessee.

between the parties. Moreover, the contract negotiations between AmSty and Ingram were conducted in anticipation of a long-term future relationship and in the aftermath of a long-term prior business relationship[8] (irrespective of whether an enforceable contract was ultimately formed). AmSty's argument that purposeful availment should not be found because Ingram's location in Tennessee was not a factor in its decision is unavailing. The fact that AmSty might have been equally satisfied to reach out and create an ongoing business relationship with a barge transport company located outside of Tennessee does not change that they did, in fact, reach out and create an ongoing business relationship with a Tennessee corporation. Accordingly, the court finds that AmSty purposefully availed itself of the privilege of acting or causing a consequence in Tennessee such that jurisdiction is appropriate.

### B. Claim Arising from Contact

This element does not require an in-depth discussion because the claim at issue is one for a breach of the very contract that is alleged to have been formed by the contact between Ingram and AmSty. In other words, as a breach of contract action, this case necessarily arises from the contract negotiations between AmSty and Ingram (and the services performed by Ingram) that formed the basis for the finding of purposeful availment, as discussed above. *See, e.g., Cole*, 133

---

[8] AmSty argues that the prior three-year contract between AmSty and Ingram is not relevant to the instant analysis and that the court should look only to the circumstances surrounding the alleged contract at issue in this action in determining whether those circumstances give rise to personal specific jurisdiction over this matter. The court finds that the prior contract may be relevant to the extent that it lengthens the ongoing relationship between AmSty and Ingram and strengthens the evidence of AmSty's intent to form a long-term relationship with the forum state through a series of contracts with Ingram. Nevertheless, the court finds that, even absent the existence of the prior contract, jurisdiction is properly established here based on the months-long negotiation process, the months-long provision of services, and the anticipated years-long contract that is the subject of the action.

F.3d at 436 ("If, as here, a nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters to [a forum state resident], then the defendant has purposefully availed himself of the forum by creating a continuing obligation [in the forum state]. Furthermore, if the cause of action is for a breach of that contract, as it is here, then the cause of action *naturally arises from* the defendant's activities in [the forum state].") (internal citations omitted) (emphasis added); *see also First Nat'l Bank of Louisville v. J.W. Brewer Tire, Co.*, 680 F.2d 1123, 1126 ("Both the first and second prongs are met when a dispute arises from a substantial business contract with a corporation based in another jurisdiction").[9] For this reason, the court finds the second prong of the *Mohasco* test is plainly met.

### C. Reasonableness of Asserting Jurisdiction

In determining whether personal jurisdiction is reasonable, the court must consider the following factors: the burden on AmSty to litigate in Tennessee, the interest of the state of Tennessee in resolving this action, Ingram's interest in obtaining relief in Tennessee, and the efficiency of litigating here. *CompuServe*, 89 F.3d at 1268 (*citing Am. Greetings Corp.*, 839 F.3d at 1169-70). Once the first two *Mohasco* elements are met, however, the reasonableness of jurisdiction is presumed. *See First Nat'l Bank of Louisville*, 680 F.2d at 1126 ("When the first

---

[9] AmSty's reliance on *Kerry* and *LAK*, as examples of cases where a contract claim was found *not* to have arisen from defendants' contacts with the forum state, is inapposite because, as discussed above, the defendants' contacts with the forum states in *Kerry* and *LAK* were not deemed sufficient to show purposeful availment. Accordingly, in *Kerry*, those contacts were not seen as the basis of the contractual relationship giving rise to the cause of action. 106 F.3d. at 152. And, in *LAK*, while holding that the contacts were too attenuated to support a finding that the claim arose from the contacts, the court specifically stated that, "[i]f the contract had borne a more substantial relationship to [the forum state], it would not have been necessary" for the misconduct at issue in the case to have taken place in the forum state. 885 F.2d at 1303.

two elements are met, an inference arises that the third, fairness, is also present; only the unusual case will not meet this third criterion."). Moreover, even absent this presumption, the court finds that jurisdiction over AmSty in this action is reasonable. While AmSty argues that litigating in Tennessee would pose a burden because it has no offices or facilities here and the AmSty employees with knowledge of the alleged contract are all located in The Woodlands, Texas, the court finds that AmSty has not demonstrated that this burden is unreasonable. AmSty is a large corporation, with facilities throughout the country, that engages in business with out-of-state entities as a matter of course. AmSty does not dispute that it has had an ongoing business relationship with Ingram and that its employees have travelled to Tennessee to meet with Ingram representatives in the past (regardless of whether these meetings were related to the instant action), suggesting that AmSty is not unduly burdened by the prospect of sending employees to Tennessee in connection with this litigation. Additionally, the burden to AmSty does not outweigh Ingram's interest in litigating in Tennessee, in light of the fact that the Ingram employees involved in the negotiation of the alleged contract are located in Ingram's Nashville office. Moreover, the State of Tennessee plainly has a reasonable interest in adjudicating the contractual rights of its residents. *See. e.g., Mohasco*, 401 F.2d at 385 ("And when the contract is with a resident of Tennessee, the State's interest in resolving a suit based on the contract and brought by that resident cannot be doubted."). Finally, as discussed more fully in the subsequent section, the efficiency of the litigation would not be improved by exchanging the inconvenience to Amsty of litigating in Tennessee for the inconvenience to Ingram of litigating elsewhere. Therefore, the court's exercise of specific personal jurisdiction in this matter is reasonable and appropriate.

### D. Finding of Proper Jurisdiction and Venue

Because each of the *Mohasco* elements is met, the court finds that it has specific personal jurisdiction over AmSty in this action. Under 28 U.S.C. § 1391(c)(2), for venue purposes, "an *entity* with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . .". (emphasis added). Therefore, AmSty – as a limited liability company, or entity, defendant – is a resident of Tennessee for the purpose of determining proper venue in this action. Under 28 U.S.C. §1391(b)(1), venue is proper in any "judicial district in which any defendant resides, if all defendants are residents of the State in которой the district is located." Accordingly, venue is proper in this action as well.

**Transfer of Venue**

Federal law governs the court's consideration of a request for transfer of venue in a diversity dispute. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 27-28 (1988). Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."[10] In deciding a motion to transfer, a district court should consider "case-specific factors," such as "the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of interests of justice." *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1136-

---

[10] The court notes that § 1404 applies to cases where, as here, it has been established that venue is proper but a party requests a transfer to a different venue for convenience. This is in contrast to 28 U.S.C. § 1406, which governs transfer where venue is not proper.

12

37 (6th Cir. 1991) (internal citations omitted); *see also Reese v. CNH Am. LLC*, 574 F.3d 315, 320 (6th Cir. 2009). District courts in this circuit have held that it is not proper to transfer venue where the inconvenience of one party is exchanged for the inconvenience of another. *See e.g., SiteWorks Solutions, LLC v. Oracle Corp*, 2008 WL 4415075 at *4 (W.D. Tenn. Sept. 22, 2008); *Flight Solutions, Inc. v. Club Air, Inc.*, 2010 WL 276094 at *4 (M.D. Tenn. Jan. 14. 2010). The moving party bears the burden of establishing that transfer is warranted. *See, e.g., Picker Int'l, Inc. v. Travelers Indem. Co.*, 35 F. Supp. 2d 570, 573 (N.D. Ohio 1998); *Blane v. Am. Investors Corp.*, 934 F.Supp. 903, 907 (M.D. Tenn. 1996); *Clayton v. Heartland Res., Inc.*, 2008 WL 2697430, at *3 (M.D. Tenn. June 30, 2008). While not dispositive, a plaintiff's choice of forum should be given weight when deciding whether to transfer venue. *Reese,* 574 F.3d at 320 ("'[U]nless the balance is strongly in favor of the defendants, the plaintiff's choice of forum should rarely be disturbed.'") (quoting *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608 (6th Cir. 1984)); *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 413 (6th Cir. 1998). Ultimately, a district court has "broad discretion to grant or deny a motion to transfer a case." *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994) (internal citations omitted).

AmSty argues that, even if the court has personal jurisdiction over this case, it should transfer the venue to either Louisiana or Texas. While Ingram does not expressly rebut this argument,[11] the court finds that AmSty has not met its burden in establishing that transfer is

---

[11] Ingram mistakenly responds to AmSty's request to transfer venue under § 1404 by arguing that, if the court does *not* have jurisdiction, the case should be transferred to Louisiana rather than to Texas. If the court did not have jurisdiction, however, this case would be dismissed. *See Pitcock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993) ("[A] transfer under § 1404(a) may not be granted when the district court does not have personal jurisdiction over the defendants"). AmSty's § 1404 transfer request is an alternative argument, assuming that jurisdiction is

warranted. AmSty emphasizes that all of its employees who were involved in the negotiation of the alleged contract with Ingram are located in Texas. AmSty, however, does not address the fact that all of the Ingram employees who were involved in the negotiation are located in Tennessee. Neither party has asserted that they anticipate calling non-party witnesses in this action, and at present it appears to the court that the witnesses will be primarily – if not exclusively – employees of the parties who can shed light on whether there was in fact the formation of a contract (in other words, witnesses from Tennessee on behalf of Ingram and from Texas on behalf of AmSty). AmSty is a company with facilities throughout the United States; it has presented no evidence of undue hardship if it were forced to litigate away from its primary place of business. Further, there is no evidence to suggest that litigating in Tennessee would be a greater inconvenience to AmSty than litigating in Texas would be to Ingram.

While performance under the alleged contract may have taken place in part through the loading of cargo in Louisiana, there has been no suggestion that any of the witnesses or any of the evidence related to contract formation can be found there. Nor is there any argument that Louisiana is the location of the circumstances giving rise to the dispute; both parties appear to agree that the communications and negotiations giving rise to the alleged contract were conducted between Ingram employees in Tennessee and AmSty employees in Texas. The argument for transfer to Louisiana appears to be based solely on the fact that AmSty has a facility there and Ingram has performed services there, although there is no evidence to suggest that Ingram has a permanent office or facility there. Therefore, Louisiana appears to be the least convenient forum from the perspective of the parties and witnesses.

---

established and AmSty's argument for dismissal is unsuccessful. Ingram's briefing does not directly address the factors that the court considers in this analysis.

14

The parties do not raise any public interest factors that would influence the determination of whether venue should be transferred. As noted above, Tennessee maintains an interest in litigating contract disputes affecting the rights of Tennessee residents. While Texas also has an interest in litigating its residents' contract disputes, there is no indication here that public interest factors would favor Texas over Tennessee. If anything, the fact that the contract at issue relates to the primary business of the Tennessee resident who is a plaintiff in this action would suggest that Tennessee's interest is stronger than Texas' interest in this matter. Finally, the court considers that Ingram is the plaintiff and a resident of Tennessee and, therefore, its choice of forum in Tennessee deserves some degree of deference. For these reasons, AmSty's motion to transfer will be denied, and the case will remain in the Middle District of Tennesse.

## **CONCLUSION**

For the foregoing reasons, AmSty's Motion to Dismiss for Lack of Personal Jurisdiction or, Alternatively, to Transfer Venue will be denied.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge